Dennis M. SAFRANSKI, Plaintiff,

v.

Donna E. SHALALA, Secretary of Health & Human Services, Defendant.

No. 92 C 4874.

United States District Court, N.D. Illinois, E.D.

Nov. 17, 1993.

Amy F. Peterson, Cook Co. Legal Assistance Foundation, Inc., Oak Park, IL, for plaintiff.

Carol A. Davilo, Asst. U.S. Atty., Chicago, IL, for defendant.

## *MEMORANDUM OPINION AND ORDER*

LINDBERG, District Judge.

Plaintiff, Dennis Safranski, brought this action for judicial review of the decision by defendant, Secretary of Health and Human Services, to deny him Supplemental Security Income (SSI) payments. Each party filed a motion for summary judgment. The assigned United States Magistrate Judge, pursuant to a referral from this district judge, issued a report and recommendation on September 14, 1993, with respect to these motions, recommending a remand to the Secretary. See 28 U.S.C. § 636(b)(1)(B), (C); FRCP 72(b). Each party has filed objections to the magistrate judge's September 14, 1993, report and recommendation. The portions of the magistrate judge's recommended disposition to which the parties have objected have been reviewed by the court de novo. 28 U.S.C. § 636(b)(1); FRCP 72(b). The magistrate judge's recommended decision will be rejected. 28 U.S.C. § 636(b)(1); FRCP 72(b).

The magistrate judge recommended "that Mr. Safranski's case be remanded for additional testing as to his coronary condition only." Both parties have objected to the recommended remand; plaintiff contending that the record establishes his disability and defendant contending that substantial evidence supports the Secretary's decision that plaintiff is not entitled to SSI payments.

■ As defendant notes in her objection, the Seventh Circuit has recently decided a case concerning the propriety of remand to the Secretary for further development of the record. In that case, the court stated:

How much is enough is a subject on which reasonable persons can differ. Administrative law judges, members of the Appeals Council, and three tiers of federal judicial officers (magistrate judges, district judges, and circuit judges) bring different perspectives to the inquiry. Sequential review, with each tier able to reverse the prior one, means that to be safe the ALJ must develop the record as fully as the most demanding reviewer prefers. Because these reviewers are selected at random from a large pool, to be *really* safe

the ALJ must please the most demanding federal judge in the jurisdiction. Yet this portends extended hearings and corresponding delay for the many claimants waiting for an ALJ to reach their case in a long queue.... Concern for the need to get on with today's cases today and reach tomorrow's cases tomorrow, rather than next month, suggests that the federal judiciary accept reasonable assessments by administrative officials about how much evidence is enough.

. . . .

Judicial review of administrative decisions is deferential. A decision supported by substantial evidence must be enforced. When conducting trials in their own courtrooms, judges may indulge a preference for "more"—although most do not, recognizing that cumulative evidence rarely repays the costs of gathering and presenting it. When reviewing proceedings conducted by others, district judges must respect the authority of administrative officials to decide how much is enough.

*Kendrick v. Shalala*, 998 F.2d 455, 457–58 (7th Cir.1993). Thus, unless the determination that enough evidence was before the Secretary was not a reasonable assessment, which does not appear to be the case, a remand for further evidence would not be warranted.

Moreover, it appears that as of November 13, 1992, the Secretary found plaintiff to be disabled and entitled to SSI payments. As plaintiff points out, additional testing at this time when the Secretary apparently agrees that plaintiff is disabled would appear to be of little or no use in determining whether plaintiff's condition met or equalled the applicable Listing under the regulations between December 21, 1990, and November 12, 1992.

■ There is, however, a more basic difficulty with the recommended remand. It is now established that:

> In cases reviewing final agency decisions on Social Security benefits, the exclusive methods by which district courts may remand to the Secretary are set forth in sentence four and sentence six of § 405(g)....

*Shalala v. Schaefer*, —— U.S. ——, ——, 113 S.Ct. 2625, 2629, 125 L.Ed.2d 239 (1993). See 42 U.S.C. § 405(g). Because the statute applicable to SSI payments provides, "The final determination of the Secretary after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Secretary's final determinations under section 405 of this title," 42 U.S.C. § 1383(c)(3), the same is true of cases reviewing final agency determinations on SSI benefits. See *Melkonyan v. Sullivan*, —— U.S. ——, ——, 111 S.Ct. 2157, 2164, 115 L.Ed.2d 78 (1991) (stating in SSI disability benefits case that sentences four and six of Section 405(g) set forth the only kinds of remand available). Thus, the recommended remand may only be ordered if it is authorized by either the fourth or the sixth sentence of Section 405(g).

The fourth sentence of Section 405(g) states:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The remand recommended by the magistrate judge would not accompany "a judgment affirming, modifying, or reversing the decision of the Secretary," 42 U.S.C. § 405(g); rather, its purpose would be to develop facts which would provide the basis for the court's entering such a judgment. The remand recommended could not be ordered pursuant to sentence 4 of Section 405(g).

The sixth sentence of Section 405(g) states in part:

> The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action to be taken by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding....

42 U.S.C. § 405(g). The Secretary has not made any motion to remand, has not shown good cause, and has filed an answer, so the recommended remand is not authorized by the first portion of this sentence. What the magistrate judge is recommending comes closest to this sentence's statement that the court "may at any time order additional evidence to be taken before the Secretary." 42 U.S.C. § 405(g). The problem with this is a remand for such a purpose may be ordered "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding...." 42 U.S.C. § 405(g). There is no existing "new evidence which is material," the recommendation rather contemplating that such evidence would come into existence while the case was before the Secretary on remand in the form of the results of additional tests. 42 U.S.C. § 405(g). There is moreover no evidence of "good cause for the failure to incorporate such evidence into the record in a prior proceeding" as there was nothing to prevent the additional testing contemplated at the time of the prior proceeding. 42 U.S.C. § 405(g). Thus, the recommended remand is not authorized by sentence four or sentence six of Section 405(g), and so may not be ordered.

The balance of the objections of the parties concern whether certain of the magistrate judge's findings with respect to the Secretary's determination that plaintiff was not disabled should be affirmed or reversed. It is thus necessary to consider both the Secretary's procedure for determining whether an applicant for SSI benefits is disabled and this court's standard of review of that determination.

The Seventh Circuit recently outlined the procedure followed by the Secretary:

In order to qualify for SSI benefits, a claimant must be "disabled." The Act defines "disabled" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is further defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(C).

Social Security regulations outline a five-step inquiry to be followed in determining whether a claimant is disabled. 20 C.F.R. § 416.920(a)–(f). The Secretary must determine in sequence: (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing any work in the national economy. *Schroeter v. Sullivan,* 977 F.2d 391, 393 (7th Cir.1992). Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. *Rhoderick v. Heckler,* 737 F.2d 714, 715 (7th Cir.1984).

*Pope v. Shalala,* 998 F.2d 473, 477–78 (7th Cir.1993). With respect to the third step, the Secretary:

[W]ill not consider [claimant's] impairment one listed ... solely because it has the diagnosis of a listed impairment. It must also have the findings shown in the Listing for that impairment.

20 CFR § 416.925(d). Moreover, the Secretary:

[W]ill decide that [claimant's] impairment(s) is medically equivalent to a listed impairment ... if the medical findings are at least equal in severity and duration to the listed findings. [The Secretary] will compare the symptoms, signs, and laboratory findings about your impairment(s), as shown in the medical evidence we have about your claim, with the medical criteria shown with the listed impairment. If [claimant's] impairment is not listed, [the

Secretary] will consider the listed impairment most like [claimant's] impairment to decide whether [claimant's] impairment is medically equal. If [claimant] has more than one impairment, and none of them meets or equals a listed impairment, [the Secretary] will review the symptoms, signs, and laboratory findings about [claimant's] impairments to determine whether the combination of [claimant's] impairments is medically equal to any listed impairment.

20 CFR § 416.926(a). In determining medical equivalence:

[The Secretary] will always base [her] decision about whether [claimant's] impairment(s) is medically equal to a listed impairment on medical evidence only. Any medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques.

20 CFR § 416.926(b).

Judicial review of determinations by the Secretary is deferential. The Secretary's findings are to be affirmed if:

[T]hey are supported by substantial evidence. 42 U.S.C. § 405(g); *Allen v. Sullivan*, 977 F.2d 385, 389 (7th Cir.1992). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1424, 28 L.Ed.2d 842 (1971).

*Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir. 1993). The court is not to decide the facts anew, but is to review the record in its entirety to determine whether substantial evidence supports the Secretary's decision. *Pope v. Shalala*, 998 F.2d 473, 480 (7th Cir. 1993), citing *Clark v. Sullivan*, 891 F.2d 175, 177 (7th Cir.1989).

■ The Secretary found, *inter alia:*

2. The medical evidence establishes that the claimant has coronary artery disease which is controlled with medication, stable angina, non-insulin dependent diabetes mellitus which is controlled with medication, obesity, and is status post a transmetatarsal amputation of the right foot. He also experiences occasional headaches and dizziness.

3. The claimant's impairments, considered singly or in combination, do not meet or equal in severity the requirements established in the Listing of Impairments in Appendix 1, Subpart P, Regulations No. 4.

Plaintiff contends that his impairments, singly or in combination, meet or equal two of the listings in the Listing of Impairments.

The first listing at issue states:

4.04 *Ischemic heart disease with chest pain [of] cardiac origin as described in 4.00E* With:

A. Treadmill exercise test (see 4.00F and (G) demonstrating one of the following at an exercise level of 5 METS or less:

1. Horizontal or downsloping depression (from the standing control) of the ST segment to 1.0 mm. or greater, lasting for at least 0.08 second after the J junction, and clearly discernible in at least two consecutive complexes which are on a level baseline in any lead; or

2. Junctional depression occurring during exercise, remaining depressed (from the standing control) to 2.0 mm. or greater for at least 0.08 second after the J junction (the so-called slow upsloping ST segment), and clearly discernible in at least two consecutive complexes which are on a level baseline in any lead; or

3. Premature ventricular systoles which are multiform or bidirectional or are sequentially inscribed (3 or more); or

4. ST segment elevation (from the standing control) to 1 mm. or greater; or

5. Development of second or third degree heart block; or

B. In the absence of a report of an acceptable treadmill test (see 4.00G), one of the following:

1. Transmural myocardial infraction exhibiting a QS pattern or a Q wave with amplitude of at least ⅓rd of R wave and with a duration of 0.04 second or more. (If these are present in leads III and a VF only, the requisite Q wave findings must be shown, by labelled tracing, to persist on deep inspiration); or

2. Resting ECG findings showing ischemic-type (see § 4.00F1) depression of

ST segment to more than 0.5 mm. in either (a) leads I and a VL and $V_6$ or (b) leads II and III and a VF or (c) leads $V_3$ through $V_6$; or

3. Resting ECG findings showing an ischemic configuration or current of injury (see 4.00F1) with ST segment elevation to 2 mm. or more in either (a) leads I and a VL and $V_6$ or (b) leads II and III and a VF or (c) leads $V_3$ through $V_6$; or

4. Resting ECG findings showing symmetrical inversion of T waves to 5.0 mm. or more in any two leads except leads III or a VR or $V_1$ or $V_2$; or

5. Inversion of T wave to 1.0 mm. or more in any of leads I, II, aVL, $V_2$ to $V_6$ *and* R wave of 5.0 mm. or more in lead aVL *and* R wave greater than S wave in lead aVF; or

6. "Double" Master Two–Step test demonstrating one of the following:

a. Ischemic depression of ST segment to more than 0.5 mm. lasting for at least 0.08 second beyond the J junction and clearly discernible in at least two consecutive complexes which are on a level baseline in any lead; or

b. Development of a second or third degree heart block; or

7. Angiographic evidence (see 4.00H) (obtained independent of Social Security disability evaluation) showing one of the following:

a. 50 percent or more narrowing of the left main coronary artery; or

b. 70 percent or more narrowing of a *proximal* coronary artery (see 4.00H3) (excluding the left main coronary artery); or

c. 50 percent or more narrowing involving a long (greater than 1 cm.) segment of a proximal coronary artery or multiple proximal coronary arteries; or

8. Akinetic or hypokinetic myocardial wall or septal motion with left ventricular ejection fraction of 30 percent of less measured by contrast or radio-isotopic ventriculographic methods; or

C. Resting ECG findings showing left bundle branch block as evidenced by QRS duration of 0.12 second or more in leads I, II, or III *and* R peak duration of 0.06

second or more in leads I, aVL, $V_5$, or $V_6$, unless there is a coronary angiogram of record which is negative (see criteria in 4.04B7).

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 4.04. The doctor who gave plaintiff a stress test reported:

[H]e went 6 minutes and 24 seconds of the Bruce protocol and stopped because of orthopedic limitations due to his prior toe amputation. He did not experience chest pain with exercise. He reached 81% of his maximum predicted heart rate and at that decreased level of activity he did have a borderline 1 mm ST segment on his electrocardiogram. The associated thallium myocardial perfusion scan was abnormal because of decreased perfusion in the posterolateral and inferior wall of the left ventricle which was predominantly reversible on reimaging at rest.

This is not the same as the findings required for the listing, nor is it medically equivalent to the findings. See 20 CFR §§ 416.925(d), 416.926(a). Nor do the symptoms of plaintiff's heart condition, diabetes, transmetatarsal amputation of the toes of his right foot, and the side effects of his medication (which plaintiff claims to be headaches, light-headedness, shortness of breath, and dizziness when ascending stairs and bending), cause "the medical findings [to be] at least equal in severity and duration to the . . . findings" for Listing 4.04. 20 CFR § 416.926(a), (b); 20 C.F.R., Pt. 404, Subpt. P., App. 1 § 4.04. Therefore, there is substantial evidence in the administrative record to support the Secretary's finding that neither plaintiff's heart condition, nor the combination of his impairments, meets or equals Listing 4.04.

■ The second listing at issue states:

9.08 *Diabetes mellitus.* With:

A. Neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C) . . . .

20 C.F.R., Pt. 404, Subpt. P., App. 1 § 9.08(A). The cited listing reads:

C. *Persistent disorganization of motor function* in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combination, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R., Pt. 404, Subpt. P., App. 1 § 11.-00(C). Plaintiff did not present evidence establishing that his diabetes mellitus was associated with "significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station," 20 C.F.R., Pt. 404, Subpt. P., App. 1 § 9.08(A), particularly in light of the way "persistent disorganization of motor function" is used in the Listing. See 20 C.F.R., Pt. 404, Subpt. P., App. 1 § 11.00(C). Nor do the symptoms of plaintiff's heart condition, diabetes, transmetatarsal amputation of the toes of his right foot, and the side effects of his medication (which plaintiff claims to be headaches, light-headedness, shortness of breath, and dizziness when ascending stairs and bending), cause "the medical findings [to be] at least equal in severity and duration to the ... findings" for Listing 9.08, 20 C.F.R. § 416.926(a), (b), as they do not together amount to "significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station," 20 C.F.R., Pt. 404, Subpt. P., App. 1 § 9.08(A). Therefore, there is substantial evidence in the administrative record to support the Secretary's finding that neither plaintiff's diabetes mellitus nor the combination of his impairments, meets or equals Listing 9.08(A).

■ There remains only plaintiff's challenge to the Secretary's determination at the fifth of the five steps, "whether the claimant is capable of performing any work in the national economy." *Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993). The Secretary found:

10. Rule 202.11 in Table No. 2 of Appendix 2, Subpart P, Regulations No. 4, in conjunction with Regulation 20 CFR 416.969, requires that the claimant, considering his age, education, vocational background, and maximum sustained work capacity, be found "not disabled."

11. While the claimant is not capable of performing a full range of light work, the vocational expert's testimony is convincing that he is nonetheless capable of performing work which exists in significant numbers in the national economy. Examples of jobs he can perform include those of a cashier, service station attendant, dispatcher, assembler, and customer service representative.

With respect to this, plaintiff argues:

The substantial evidence of record establishes that Mr. Safranski is incapable of performing substantially all of the activities required by light work. The Magistrate Judge acknowledges that Mr. Safranski cannot carry twenty pounds without falling down, that he cannot stand or walk for more than two hours, and that he can only occasionally use left foot controls.... He also suffers from dizziness.

Even if Mr. Safranski could perform sedentary work, the Grid directs a finding of disabled. 20 C.F.R., Part 404, Appendix 2, 200.00 *et seq.,* .... Since the evidence of record establishes that Mr. Safranski is unable to perform light work, a finding of disability should be made without remanding for coronary testing.

Plaintiff's argument implies that if plaintiff is not able to perform light work, he is only capable of performing sedentary work making the table for sedentary work capacity applicable. However, the relevant regulation states:

The *Dictionary of Occupational Titles* includes information about jobs (classified by their exertional and skill requirements) that exist in the national economy. Appendix 2 provides rules using this data reflecting major functional and vocational patterns. [The Secretary] appl[ies] these rules in cases where a person is not doing

substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work. The rules in appendix 2 do not cover all possible variations of factors. Also, ... [the Secretary] do[es] not apply these rules if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of a rule. In these instances, [the Secretary] give[s] full consideration to all relevant facts in accordance with the definitions and discussions under vocational considerations. However, if the findings of fact made about all factors are the same as the rule, we use that rule to decide whether a person is disabled.

20 C.F.R. § 416.969. In Appendix 2, it is stated:

If an individual's specific profile is not listed within this appendix 2, a conclusion of disabled or not disabled is not directed. Thus, for example, an individual's ability to engage in substantial gainful work where his or her residual functional capacity falls between the ranges of work indicated in the rules (e.g., the individual who can perform more than light but less than medium work), is decided on the basis of the principles and definitions in the regulations, giving consideration to the rules for specific case situations in this appendix 2. These rules represent various combinations of exertional capabilities, age, education and work experience and also provide an overall structure for evaluation of those cases in which the judgments as to each factor do not coincide with those of any specific rule. Thus, when the necessary judgments have been made as to each factor and it is found that no specific rule applies, the rules still provide guidance for decisionmaking, such as in cases involving combinations of impairments. For example, if strength limitations resulting from an individual's impairment(s) considered with the judgments made as to the individual's age, education and work experience correspond to (or closely approximate) the factors of a particular rule, the adjudicator then has a frame of reference for considering the jobs or types of work precluded by

other, nonexertional impairments in terms of number of jobs remaining for a particular individual.

20 C.F.R., Pt. 404, Subpt. P., App. 2 § 200.-00(d). The Secretary found that plaintiff's residual functional capacity left him able to perform more than sedentary but less than light work. If this decision of the Secretary is supported by substantial evidence, plaintiff's position that the Grid mandates a finding of disabled is without merit.

The regulations provide:

In making disability determinations under this subpart, [the Secretary] use[s] the following definitions:

(a) *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the Secretary] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for prolonged periods of time.

20 C.F.R. § 404.1567(a), (b). Two assessments of plaintiff's residual physical functional capacity were made in 1991. In a report dated February 14, 1991, Dr. Vidyamadala found that plaintiff could occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand and/or walk

about 6 hours in an 8–hour workday; sit for a total of about 6 hours in an 8–hour workday; and plaintiff's ability to push and/or pull (including operation of hand and/or foot controls) was unlimited. In a report dated April 30, 1991, Dr. Laveri made findings similar to those of Dr. Vidyamadala, except that he found plaintiff's ability to push and/or pull (including operation of hand and/or foot controls) limited in the lower extremities. In addition, the Secretary noted that "the claimant has additional non-exertional limitations which somewhat narrow the range of light work that he can perform." This statement, supported largely by plaintiff's testimony, does not however mean that plaintiff was limited to sedentary work. Based upon the evidence before the Secretary, especially residual physical functional capacity assessments and plaintiff's testimony, there is substantial evidence to support the Secretary's conclusion that plaintiff was capable of performing more than sedentary but less than a full range of light work.

The administrative decision states:

I asked the vocational expert a hypothetical question taking into consideration an individual 51 years old, having 10½ years of education, with past relevant work experience as a bar owner, bartender and construction laborer, and who is status post a transmetatarsal amputation of the right foot. The individual is also unable to work at heights or around dangerous moving machinery and can perform no frequent bending. The individual can also walk a half a mile and lift 20 pounds, but can only walk short distances while carrying that amount of weight. In response, the vocational expert testified that such an individual could perform a significant number of light jobs which exist in the local economy. Examples of such jobs include cashier (44,-000 jobs), service station attendant (6,000 jobs), dispatcher (6,000 jobs), assembler (50,000 jobs), and customer service representative (23,000 jobs). Accordingly, I conclude that even though the claimant is capable of performing less than a full range of light work based on the exertional and nonexertional limitations outlined to the vocational expert, he is capable of performing jobs which exist in significant numbers in the economy.

The hypothetical question answered by the vocational expert sets plaintiff's capacities at a level supported by substantial evidence. The answer to that question, thus, is substantial evidence supporting the Secretary's conclusion that plaintiff is capable of performing work which exists in significant numbers in the national economy. Thus, the Secretary's finding that "[t]he claimant has not been under a disability as that term is defined in the Social Security Act, at any time through the date of this decision" is supported by substantial evidence, and his decision will be affirmed.

ORDERED: The objections of plaintiff, Dennis Safranski, to the Magistrate Judge's September 14, 1993, report and recommendation are overruled. The objections of defendant, Donna E. Shalala, Secretary of Health and Human Services to the Magistrate Judge's September 14, 1993, report and recommendation are sustained. The Magistrate Judge's September 14, 1993, report and recommendation is rejected.

Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. The decision of the Secretary of Health and Human Services denying plaintiff Supplemental Security Income benefits is affirmed. Judgment will be entered in favor of defendant and against plaintiff. FRCP 58, 79(a).